IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NICHOLAS CLEM, ERIC DOBSON, HEATHER GRAHAM, CAITLIN CASTERLIN, SHELBY KAMM, DEREK RUNNELLS, KATHY BATZ, SANA HANNA, and CANDICE EASLEY, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>KEYBANK, N.A.,<br><br>Defendant. | No. 13 Civ. 789 (JCF) |

**DECLARATION OF JUSTIN M. SWARTZ IN SUPPORT OF PLAINTIFFS'
MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT,
CONDITIONAL CERTIFICATION OF THE SETTLEMENT CLASS,
APPOINTMENT OF PLAINTIFFS' COUNSEL AS CLASS COUNSEL, AND
APPROVAL OF PLAINTIFFS' PROPOSED NOTICES OF SETTLEMENT**

1

I, Justin M. Swartz, declare as follows:

1. I am a partner in the firm of Outten & Golden LLP ("O&G") in New York, New York, Plaintiff's counsel herein, and co-chair of its Class Action Practice Group. O&G is a 30+ attorney firm based in New York City that focuses on representing plaintiffs in a wide variety of employment matters, including individual and class action litigation that involve wage and hour, discrimination, and harassment claims, as well as contract and severance negotiations.

2. Along with lawyers from the Shavitz Law Group, P.A., I am one of the lawyers primarily responsible for prosecuting Plaintiffs' claims on behalf of the proposed class.

3. I make these statements based on personal knowledge and would so testify if called as a witness at trial.

## My Background and Experience

4. I received a Juris Doctor degree from DePaul University School of Law in 1998 with honors. Since then, I have exclusively represented plaintiffs in employment litigation and other employee rights matters.

5. I was admitted to the bar of the State of Illinois in 1998, and the bar of the State of New York in 2002. I am also admitted to the bars of the Second Circuit Court of Appeals, the United States District Courts for the Western, Eastern, and Southern Districts of New York, and the Northern District of Illinois. I am a member in good standing of each of these bars.

6. From September 1998, through February 2002, I was associated with Stowell & Friedman, Ltd. in Chicago, Illinois, where I represented plaintiffs in class and multi-plaintiff employment discrimination cases. From March 2002, through October 2003, I worked for Goodman & Zuchlewski, LLP in New York City where I represented employees in discrimination cases and other employee rights matters.

7. Since joining O&G in December 2003, I have been engaged primarily in

prosecuting wage and hour class and collective actions and class action discrimination cases.

8. I am or was co-lead counsel on several wage and hour cases that district courts have certified as class actions and/or collective actions including *Torres v. Gristede's Operating Corp.*, No. 04 Civ. 3316, 2006 WL 2819730 (S.D.N.Y. Sept. 29. 2006), in which the Court granted summary judgment in favor of Plaintiffs and a class of more than 300 grocery store workers, *see* 628 F. Supp. 2d 447 (S.D.N.Y. Aug. 28, 2008). Others include *Yuzary v. HSBC Bank USA, N.A.*, No. 12 Civ. 3693 PGG, 2013 WL 5492998, at *2-4 (S.D.N.Y. Oct. 2, 2013) (certifying class and approving settlement of nationwide wage and hour class and collective action); *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 472-76 (S.D.N.Y. 2013) (certifying class and approving settlement of nationwide wage and hour class and collective action); *Toure v. Amerigroup Corp.*, No. 10 Civ. 5391, 2012 WL 3240461, at *2-4 (E.D.N.Y. Aug. 6, 2012) (certifying class and approving settlement of wage and hour class action brought under New York and federal law); *Palacio v. E*TRADE Financial Corp.*, No. 10 Civ. 4030, 2012 WL 1058409, at *1-2 (S.D.N.Y. Mar. 12, 2012) (certifying class and approving settlement of wage and hour class action brought under New York, California, and federal law); *Johnson v. Brennan*, No. 10 Civ. 4712, 2011 WL 1872405, at *1 (S.D.N.Y. May 17, 2011) (certifying class and approving settlement of wage and hour class action brought under New York and federal law); *Clark v. Ecolab Inc.*, Nos. 07 Civ. 8623, 04 Civ. 4488, 06 Civ. 5672, 2009 WL 6615729, at *4 (S.D.N.Y. May 11, 2010) (certifying class and approving settlement of multi-state wage and hour class action); and *Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 165 (S.D.N.Y. 2008) (granting class certification and appointing O&G class counsel in multi-state wage and hour class action).

9. I am a member of the National Employment Lawyers Association ("NELA") and

serve on the Executive Board of its New York Chapter ("NELA/NY"). I am co-chair of NELA's Fair Labor Standards Act Committee. I served on the Civil Rights Committee of the New York City Bar Association of the Bar of the City of New York from 2005 through 2008 and the Committee on Labor and Employment Law from September 2002 until June 2005. I was co-chair of the American Bar Association Labor and Employment Law Section Ethics and Professional Responsibility Committee from 2006 through 2009, and am a member of its Equal Employment Opportunity Committee. I also serve on the Recent Graduate Advisory Group of the New York University Center for Labor and Employment Law.

10. I speak frequently on employment law issues, including wage and hour issues and discrimination issues. I have recently been a faculty member for continuing legal education programs focused on employment law and ethics sponsored by the American Bar Association Section of Labor and Employment Law; the New York State Bar Association Labor and Employment Law Section; the New York City Bar Committee on Labor and Employment Law, NELA, and the Practicing Law Institute, among others.

11. In connection with my work, I regularly read the New York Law Journal, advance sheets, and other literature related to employment law and class action law developments. I attend workshops and seminars at least four times per year sponsored by NELA, NELA/NY, the American Bar Association, and other organizations.

12. Courts have repeatedly found O&G to be adequate class counsel in wage and hour class actions. *See, e.g., Yuzary v. HSBC USA, N.A.*, No. 12 Civ. 3693, 2013 WL 1832181, at *4 (S.D.N.Y. Apr. 30, 2013) (appointing O&G and Shavitz Law Group as class counsel); *Hernandez v. Merrill Lynch & Co., Inc.*, No. 11 Civ. 8472, 2012 WL 5862749, at *4 (S.D.N.Y. Nov. 15, 2012) (appointing O&G and SLG as class counsel, noting both firms' "years of

experience prosecuting and settling wage and hour class actions"); *Toure*, at *5 ("[O&G] have substantial experience prosecuting and settling employment class actions, including wage and hour class actions, and are well-versed in wage and hour law and in class action law"); *Palacio*, 2012 WL 1058409, at *2 ("O&G has extensive experience prosecuting and settling nationwide wage and hour class and collective actions and ar[e] well-versed in wage and hour and class action law"); *Johnson*, 2011 WL 1872405, at *2 ("Outten & Golden . . . have years of experience prosecuting and settling wage and hour class actions, and are well-versed in wage and hour law and in class action law."); *Clark*, 2009 WL 6615729, at *5 ("Outten & Golden [lawyers] . . . are skilled and experienced employment class action lawyers . . . [and] have extensive experience prosecuting and settling nationwide wage and hour class and collective actions.").

**Shavitz Law Group, P.A.'s Background and Experience**

13. O&G's co-counsel in this matter is Gregg I. Shavitz of the Shavitz Law Group, P.A. ("Shavitz Law Group").

14. Gregg I. Shavitz received a Juris Doctor degree from the University of Miami in 1994. He practices extensively in the area of wage & hour law. Florida Trend Magazine regularly recognizes Mr. Shavitz as a Legal Elite attorney in the area of labor & employment law, and Mr. Shavitz has received LexisNexis Martindale-Hubbell's highest "AV" Peer Review Rating for preeminent attorneys. The 2009 Super Lawyers Publication listed Mr. Shavitz as one of Florida's Rising Stars in the field of Labor and Employment law, and the 2009 and 2011 South Florida Legal Guide recognized Mr. Shavitz a Top Lawyer in the field of Wage and Hour law. Mr. Shavitz also earned the distinction of Top Lawyer in Palm Beach Illustrated (2011) and is a lifelong fellow of the Florida Bar Foundation.

15. The Shavitz Law Group has served as class or lead counsel in numerous wage and

hour cases in the past decade, including *Yuzary*, 2013 WL 5492998, at *4 (appointing Shavitz Law Group, among other law firms, as Class Counsel and noting they have been lead counsel or co-counsel on "dozens of wage and hour class and collective actions"); *Beckman*, 293 F.R.D. at 473; *Palacio*, 2012 WL 1058409, at *2 (appointing the Shavitz Law Group as Class Counsel based on their experience in "numerous wage and hour class and collective actions"); *Nash v. CVS Caremark Corp.*, No. 09 Civ. 79 (D.R.I. Dec. 9, 2011) (finding the Shavitz Law Group, among other counsel, adequate to serve as class counsel) (attached here to as **Exhibit A**); *Saliford v. Regions Financial Corp.,* No. 10 Civ. 61031 (S.D. Fla.); *Stewart v. Prince Telecom, Inc.*, No. 10 Civ. 4881 (S.D.N.Y.); *Hosier v. Mattress Firm, Inc.*, No. 10 Civ. 294 (M.D. Fla.); *Briscoe-Grey v. Sears Holding Corp.*, No. 09 Civ. 81408 (S.D. Fla.); *Lewis v. Iowa Coll. Acquisition Corp.*, No. 08 Civ. 61011 (S.D. Fla.); and *Brooks v. First Data Corp.*, No. 11-18202 (Fla. Cir. Ct.); among others.

**Thorough Investigation of the Class Claims**

16. This proposed settlement would resolve claims brought by Plaintiffs Nicholas Clem, Eric Dobson, Heather Graham, Caitlin Casterlin, Shelby Kamm, Derek Runnells, Kathy Batz, Sana Hanna, and Candice Easley ("Plaintiffs") on behalf of themselves and other similarly situated Client Service Managers ("CSMs") and those in comparable positions employed by KeyBank, N.A. (collectively "KeyBank" or "Defendant"), alleging that Defendant violated federal and state wage and hour laws by misclassifying them as exempt employees and failing to pay them and other CSMs overtime wages.

17. Before the initiation of this action, I, along with a team of attorneys and paralegals at O&G and our co-counsel, the Shavitz Law Group, conducted a thorough investigation into the merits of the potential claims and defenses. We focused our investigation and legal research on

6

the underlying merits of Class Members' claims, the damages to which they were entitled, and the propriety of class certification.

18. We conducted in-depth interviews with numerous Plaintiffs to determine the hours that they worked, the wages they were paid, the nature of their duties and responsibilities, and other information relevant to their claims. We also obtained and reviewed numerous documents from Plaintiffs related to their employment with KeyBank, including pay records, offer letters, and other related documents.

19. We conducted in-depth background research on KeyBank, including reviewing SEC filings and other public documents, to obtain information on KeyBank's corporate structure and facilities. We also obtained numerous job postings for the CSM position from across the country to determine the nature of the duties and responsibilities of the position. We also obtained investigation reports and other documents about KeyBank's labor practices from the U.S. Department of Labor through a Freedom of Information Act request.

**Litigation**

20. On February 4, 2013, Plaintiffs filed a Class Action Complaint against Defendant in the United States District Court for the Southern District of New York on behalf of themselves and others similarly situated alleging that Defendant violated the Fair Labor Standards Act ("FLSA") and the wage and hour laws of New York and Washington by improperly classifying CSMs as exempt from federal and state overtime requirements. The complaint sought recovery of overtime wages, attorneys' fees and costs, interest, and liquidated damages.

21. On June 10, 2013, Plaintiffs filed an Amended Complaint asserting additional state claims under Colorado and Maine state laws.

22. On March 13, 2014 Plaintiffs filed a Second Amended Complaint asserting additional state claims under Ohio, Oregon and Indiana state laws.

**Settlement Negotiations**

23. On or about September 25, 2013, the parties agreed to mediate this case and entered into a tolling agreement to explore a possible resolution of Plaintiffs' claims.

24. Over the next several months, the parties engaged in targeted formal discovery to allow the parties to assess the claims and calculate damages in advance of mediation. Defendant produced over nine hundred pages of documents to Plaintiffs, including job descriptions for the CSM positions and various corporate documents discussing the CSM position, its creation, and the duties and responsibilities of the position. Defendant also produced additional documents to assist in the analysis of hours worked.

25. Defendant also produced data showing the number of Class Members in the CSM job title, salaries, incentive pay, weeks worked, and location of employment. Plaintiffs analyzed this data and constructed a damages model based on the data. Defendant retained an economic expert to analyze the data and also performed damages calculations.

26. Defendant also took the depositions of six named and opt-in plaintiffs, and Plaintiffs took the deposition of KeyBank's 30(b)(6) corporate representative.

27. On December 3, 2013, the parties attended a full day mediation session in San Francisco with David Rotman, Esq., a well-known and experienced mediator in wage and hour law. The parties made substantial progress on that day, but did not come to an agreement. Over the next week, the parties continued to negotiate, with Mr. Rotman's assistance. During the next several months, the parties negotiated the remaining terms of the settlement, which were memorialized in a formal Joint Settlement and Release ("Settlement Agreement") executed by the parties on or about March 12, 2014.

**Settlement Terms and Allocation Formula**

28. The Settlement Agreement creates a common fund of Three Million Five Hundred Thousand and No/100ths Dollars ($3,500,000.00) to settle all claims against the Defendant (the "Fund"). Ex. B (Settlement Agreement) § 3.1(A). The Fund covers Class

Members' awards, service payments, attorneys' fees and costs, settlement administrator's fees and costs, employee and employer side payroll taxes, and any fees and costs associated with investing and liquidating the Fund. Ex. B (Settlement Agreement) § 3.1(A) and § 3.5(C), (E).

29. Class Members who are entitled to receive payments from the Fund include two groups of persons employed by KeyBank as CSMs ("Class Members"):

    a. Rule 23 Class: The "Rule 23 Class" consists of the following seven sub-classes of individuals ("Rule 23 Class Members"):

        i. New York Sub-Class: The "New York Sub-Class" consists of all individuals who were employed as CSMs and/or Operations Supervisors in the State of New York from February 4, 2007 to April 20, 2013;

        ii. Ohio Sub-Class: The "Ohio Sub-Class" consists of all individuals who were employed as CSMs in the State of Ohio from February 4, 2010 to April 20, 2013;

        iii. Colorado Sub-Class: The "Colorado Sub-Class" consists of all individuals who were employed as CSMs in the State of Colorado from February 4, 2010 to April 20, 2013;

        iv. Washington Sub-Class: The "Washington Sub-Class" consists of all individuals who were employed as CSMs in the State of Washington from February 4, 2010 to April 20, 2013;

        v. Oregon Sub-Class: The "Oregon Sub-Class" consists of all individuals who were employed as CSMs in the State of Oregon from February 4, 2010 to April 20, 2013;

        vi. Indiana Sub-Class: The "Indiana Sub-Class" consists of all individuals who were employed as CSMs in the State of Indiana from February 4, 2010 to April 20, 2013; and

        vii. Maine Sub-Class: The "Maine Sub-Class" consists of all individuals who were employed as CSMs in the State of Maine from February 4, 2010 to April 20, 2013. Ex. B (Settlement Agreement) § 1.29.

  b. FLSA Class Members: "FLSA Class Members" consist of all individuals who were employed as CSMs from February 4, 2010 to April 20, 2013. Ex. B (Settlement Agreement) § 1.14.

30. Defendant agreed not to oppose the Preliminary Approval Motion. Ex. B (Settlement Agreement) § 2.3(E).

31. The "Net Settlement Fund" is the Settlement Fund less: (i) court-approved attorneys' fees and costs; (ii) court-approved service payments to Plaintiffs; (iii) the Claims Administrator's fees and costs; (iv) KeyBank's share of all state and federal payroll taxes imposed by applicable law, including the employer's share of the FICA tax and any federal and state unemployment tax due with all amounts treated as wages; and (v) a $50,000 reserve fund to cover errors and omissions and approved additional claims ("Reserve Fund"). Ex. B (Settlement Agreement) § 1.18.

32. Each New York Sub-Class Member will be assigned one point for each week worked in New York from February 4, 2007 to April 20, 2013. Ex. B (Settlement Agreement) § 3.4(B)(1).

33. Each Class Member who worked in any state other than New York shall be assigned one point for each week worked in any state other than New York from February 4, 2010 to April 20, 2013. Ex. B (Settlement Agreement) § 3.4(B)(2).

34. The Claims Administrator will then divide the total number of points for each Class Member by the total number of points for all Class Members to determine each Class Member's portion of the "Net Settlement Fund". Ex. B (Settlement Agreement) § 3.4(B)(3)(a), (b). The Claims Administrator will then multiply each Class Member's portion of the "Net Settlement Fund" by the "Net Settlement Fund" to determine the amount to be paid to each Class Member. Ex. B (Settlement Agreement) § 3.4(B)(4).

35. Any unnegotiated settlement checks to Rule 23 Class Members and FLSA Class Members will be redistributed among the Class Members who have timely negotiated their checks, except that if the aggregate remaining funds is less than fifty thousand dollars ($50,000), the unclaimed funds will be donated to charity under the *cy pres* doctrine. Ex. B (Settlement Agreement) § 3.1(D).

36. KeyBank reserves the right to revoke the Settlement Agreement if more than 10% of the Rule 23 Class Members timely and properly opt out pursuant to the terms of the Settlement Agreement. Ex. B (Settlement Agreement) § 2.6. If KeyBank exercises its right to revoke the Settlement Agreement, the litigation will continue as if there were no attempt to settle the matter. Ex. B (Settlement Agreement) § 2.6.

37. The individual settlement payments include sums for wages, interest and liquidated damages. The parties agree that fifty percent (50%) of all payments to claimants will be treated as back wages. Ex. B (Settlement Agreement) § 3.5(A). The remaining fifty percent (50%) will be deemed to constitute interest, liquidated damages, and other non-wage payments. Ex. B (Settlement Agreement) § 3.5(A). The employee portion of all applicable income and payroll taxes will be the responsibility of the individual Class Member receiving a settlement payment. Ex. B (Settlement Agreement) § 3.5(E).

38. Class Members will each receive an average settlement payment of approximately $1252.00 (net of attorneys' fees and costs, service awards, claims administration fees, and reserve for errors and omissions, but before the deduction for employer payroll taxes).

**Claims Administration**

39. The parties jointly selected Angeion Group to administer the settlement. Ex. B (Settlement Agreement) § 1.30.

40. There are approximately 1,516 Rule 23 Class Members.

41. Plaintiffs Nicholas Clem, Eric Dobson, Heather Graham, Caitlin Casterlin, Shelby Kamm, Derek Runnells, Kathy Batz, Sana Hanna, and Candice Easley have reacted positively to the settlement, which is also evidenced by their signatures on the Settlement.

42. Attached as **Exhibit C** is a Notice of Proposed Settlement of Class Action Lawsuit and Fairness Hearing ("Proposed Rule 23 Notice").

43. Attached as **Exhibit D** is a Notice of Proposed Settlement of Collective Action Lawsuit and Fairness Hearing ("Proposed FLSA Notice").

I declare under penalty of perjury, under 28 U.S.C. § 1746, that the foregoing is true and correct.

Executed this 14th day of March, 2014
New York, New York.

    /s/ Justin M. Swartz
Justin M. Swartz
**Outten & Golden LLP**
3 Park Avenue, 29th Floor
New York, NY 10016
(212) 245-1000